LAND, J.
Plaintiff, an experienced workman, sued the defendant company for the sum of $8,000, as damages for the loss of the five fingers of his right hand, which were cut off while he was operating a jointer machine.
The petition alleges, in substance, that the accident was caused by the defective condition of the screw rod of the rear or right-hand table, which was loose, badly worn, and ill fitted to the table; and that, by reason of the said defects, the said rear or right-hand table “suddenly slipped or fell and became lower,” allowing the revolving knives to project an inch above the level of the two tables, thereby causing said knives to gouge deeply into the board which plaintiff was shoving across them, jerking the board from his hands, and throwing the same with great force and violence a distance of some 40 feet, striking the rear wall of the mill; and that, when said board was so jerked or thrown from plaintiff’s hands, his right hand, which was holding said board, was thrown on said revolving knives, which cut off from his right hand all five of his fingers, where they join the metacarpus.
The petition further alleges that, in order to properly operate said machine, the operator has to press downward on the board or other piece of wood being planed, in order to hold the same firmly against the revolving knives; that plaintiff on the occasion in question was so pressing the board firmly on said revolving knives; that his right hand was resting on the board about eight inches in front of said revolving knives; and that when said rear table suddenly fell downward, allowing said knives to dig into said board, and throwing it backward from his hold, his hand was thrown in said knives as above set forth.
The petition further alleges that the accident was caused by the worn and faulty mechanism of said rear table; that it was the duty of defendant’s managing agent to inspect and keep in repair the said jointer machine as well as others in said plant; that it was not the duty of the plaintiff to inspect or repair said machine; and that he had no knowledge of its dangerous defects until after the said accident.
The petition charges that the defendant was negligent in not providing the plaintiff with a safe jointer machine to work with, in providing him with a jointer machine highly defective and dangerous, and in not warning him of said defects.
Plaintiff alleged damages, in the sum of $2,000 for physical pain and suffering, in the sum of $1,000 for mental pain, embarrassment, and humiliation; and in the sum of $5,000 for the loss of earning capacity.
Defendant in its answer admits that the plaintiff, an employe, while working at a jointer machine, was injured as alleged, but specially denies that the accident occurred in the manner and for the causes stated in the petition.
The answer specially denies that the rear table suddenly slipped or fell and became lowered, as alleged, and avers that the said table in all of its parts was in good condition. '
“Defendant admits that, when the said board was jerked from plaintiff’s hands, plaintiff’s right hand fell on the said revolving knives, and that the said knives cut off all five fingers of plaintiff’s right hand as alleged.”
The answer denies that the said injury was caused by any fault or negligence whatever on the part of the defendant, but avers that the said injury was caused solely by the gross carelessness and “contributory” negligence of the plaintiff himself.
Defendant in the answer then proceeds to set forth its own theory of the accident, based on averments that it was caused by the careless and improper handling of the board by the plaintiff; and pleads that, if the machine was defective, he knew or should *27 have known its condition, and assumed the risk.
The case was tried before a jury, which returned a verdict for $7,500 in favor of the plaintiff; and, from a judgment pursuant to the verdict, the defendant has appealed.
Plaintiff’s testimony as to how the accident happened may be briefly stated as follows :
As plaintiff was dressing a board 1x12 by 3 feet long, it came across the table, he bearing down and shoving, when all at once the board jerked out from under his hand, and drew his right hand under the knives, and cut off his five fingers.
The board was jerked straight back about 40 feet. Plaintiff was holding the board in the usual manner. The machine had four knives. He was dressing the board down to % or %, he believes, and was pushing it over the knives for the first time. Plaintiff could not say exactly how much of a cut he intended to make. He had his right hand about 12 or 15 inches on that part of the board which had passed the knives, and was on the front or stationary table. His left hand was also on the board about from 4 to 6 inches slightly in front of his right hand. He was bearing-down and shoving all he could.
Witness Smith testified, in substance, that he had just dressed two boards, when the plaintiff came up to help him, and took hold of the board in question; that the witness pushed the same board up to about 8 inches of the end of it, turned it loose, and turned to pick up another, when the board on the table came back like lightning, and flew to the end of the shop, about 30 feet; that the same table sometimes would slightly fall or lower itself, because of the worn condition of the set screw.
The witness further stated that the board was slightly warped, so that the operator had to shove pretty hard, as the knives would kick the board up all the time; and that the plaintiff was handling the board in the same manner as the witness usually did.
The board is before us as one of the exhibits produced before the jury.
The witness Welch, the subforeman of the plaintiff, testified to the following effect:
After identifying the board which the plaintiff was planing at the time of the accident, the witness stated that all of the hoard, except a few inches on the rear end, had been planed down by the plaintiff to a thickness of % of an inch; that the cut or gouge across the rear end of the plank was about % of an inch deeper; that from the point where the knives first began to gouge into the board to the end of the board was 2% inches; that at the instant the board was jerked back about half an inch was resting on the rear table.
The board itself shows a double gouge, or cut extending across the entire width of the board, and appreciably below the level of that part of the board which had already been planed down to the thickness of % of an inch.
It follows that, when all hut 2% inches of the board had passed the knives, it was suddenly pressed down further on them, and was hurled back with tremendous force.
The decisive question of fact in the case is: What caused the sudden lowering of the end of the plank?
Plaintiff’s contention is that it was caused by the sudden drop of the back table, due to the giving way of the set screw.
Smith, as stated above, testified that the table sometimes lowered itself gradually on account of the worn condition of the set screw.
Welch, subforeman, testified to the same effect.
The same witness further stated that the distance between the two tables, when the machine was taking off a %-inch cut, was 2% inches; that the table could be screwed *29 down not over half an inch, if working light stuff. “Could not say that it done it then,” referring to the time the plaintiff was hurt, or on any previous occasion. No such defect was ever reported to him. He inspected the machine every morning. The machine appeared to he in good condition immediately after the accident.
Mr. Welch on re-examination stated that since the accident several of the workmen had reported to him about the back table of the machine falling down, and that the machine had been fixed so that said table would not fall.
Mr. Welch stated that he was a first cousin of the plaintiff, and was still in the employment of the defendant.
The testimony of Spangler is confused and contradictory.
He evidently had a good deal of practical experience in the working of jointer machines, but his explanations of the working of the machine are not satisfactory.
Among his statements is one in substance that the dropping of the rear table “hadn’t ought to” have any effect on the board.
Defendant avers, in answer, that the space between the two tables was about 2% inches; that the amount of the cut is regulated by-moving the two tables up and down, thus allowing the revolving knives to 'project through said space the desired distance; and that the accident occurred after the said board had been pushed by the plaintiff entirely off the rear or right-hand table of said machine, and when the rear 2 inches of said board was resting on said knives.
[1] The defendant denies that the rear right-hand table slipped or fell or became lowered, and avers that, when said board .was jerked from plaintiff’s hands, his right hand fell on said revolving knives.
Harvey Rhodes, defendant’s master mechanic, testified that he thoroughly inspected the jointer machine, including the screw, 15 or 20 minutes after the accident, and found everything in good condition.
“Q. Did you find that screw to he working or loose?
“A. No.
“Q. Did you make any test at any time, then or after, as to whether or not that table would drop or fall?
“A. No, sir.”
The witness further stated that no complaint was made to him, before the accident, that the rear table would drop or fall.
A. Bischoff, defendant’s superintendent of reclamation service, testified, in substance, that he examined the machine in question about an hour and a half after the accident; that he took the screw out and found it in good condition; that the same screw was in the machine at the time of the trial below ; that the screw was not worn, and if it had been the table would not have dropped because the bevel would have taken up the slack; and that, if all the screws slipped, the table .would not fall down — it might slide down easy if the screw was stripped, but there would be no sudden drop.
On his cross-examination, the witness stated that the screw was worn, but not loose.
The same witness further testified that, when he examined the tables on the day of the accident, they were set for a cut of % of an inch, which, in the opinion of the witness, was too large for safe operation.
The court ordered that the evidence as to the opinion of the witness be stricken out.
Carter, carpenter, testified that he handed to the plaintiff the board in question, and it was going through the machine for the first time when the plaintiff was hurt; and that the two boards planed a few minutes before by Smith went through the machine twice.
Pettingwill, former general foreman of the ear department of the defendant, testified, in substance, that he inspected the machine in question before and after the accident; that he never heard of any report before the accident that the set screw was loose and *31 that the table would fall or become lowered in the operation of the machine; that the witness heard of such .a defect after the plaintiff was injured, and thereupon inspected the machine and could discover nothing wrong about it.
We make the following excerpts from defendants’ brief:
“The two tables are quadrangular in shape, absolutely level, have no connection with one another, and are so managed that there is room between them for the shaft or knives to project.”
“The second table is so set that it is level with the top of the knives so that the lumber when planed off slides from the top of the knives to this table.”
“The first table is adjustable and is raised or lowered according to the desired size of the cut to be made.”
“If this table, for instance, be adjusted to a position one-quarter of an inch below the top of the knives, and the board was then pushed from this table over the knives, one-quarter of an inch will be cut off the bottom of the board, and it will then slide to the second table, which is exactly level with the top of the knives.”
“If the first table is set at the height of the second table, which is even with the top of the knives, necessarily no cut will result. The table is raised or lowered by a hand-set screw, which operates on four wedged-shaped iron blocks under the table. The set screw pulls these wedges forward or backwards as desired, and the tabie is thus raised or lowered to the desired height.”
The board in question had been previously-planed on one side, and its thickness thereby reduced to % of an inch. The plaintiff undertook to plane the rough side, and the evidence and the hoard itself show that he reduced the thickness of some 34 inches of that side from % to % or */s of an inch, thus demonstrating that he cut off % of an inch of the thickness, and that the rear table was set to cut % of an inch.
But the board and the evidence show that, at a point between 2 and 3 inches from the end of the board next to the knives, there is a cut or gouge into the board of an additional % of an inch, making a total cut there of Vs or % of an inch. This simple fact demonstrates that the rear table, set to cut % of an inch, must have dropped Ys of an inch more, or % of an inch in all; that is as far as it can drop.
The table could not have dropped, if the screw had held, and it follows that the dropping of the table was caused by the drop of the screw, on account of its worn condition.
The circumstance that defendant’s expert, Bisehoff, about an hour and a half after the accident, noticed that the table was set to cut % of an inch, is without probative force, since any foreman or mechanic about the mill could in the interval have reset the table. '
Defendant’s theory that the plaintiff must have placed his hand on the rear end of the board and shoved it Ya of an inch further down on the knives has no foundation in the evidence, and is refuted by the positive testimony of the plaintiff and of Smith that the former’s hands were in their proper position in front of the knives.
We are not prepared to hold that the verdict is contrary to the evidence.
There was sufficient testimony, if believed, before the jury, to warrant a finding that the set screw was old and worn, and liable at times to drop, and that this defect could have been discovered by proper inspection, and was not known to the plaintiff.
[2] In Roff v. Summit Dumber Co., 119 La. 571, 44 South. 302, the general rule applicable to cases of this kind was correctly stated by Nieholls, J., in the syllabus as follows:
“The employer’s duty, to furnish safe appliances to his employé is one of the basic obligations of the employer, and it is a continuing duty. It is not sufficient for him to see that they be safe and proper at one time. He must see that they continue so, so long as the work is to be performed.
“The willful violation of an employer of his obligation to furnish his employs with appliances which are safe, * * * and the results which flow from such violation, are not risks ordinarily incident to the business which the employe assumes.”
This doctrine is in accord with “universally recognized” rules of jurisprudence. See *33 Schemer v. Banner Rubber Co., 28 L. R. A. (N. S.) page 1221, note.
[3] Defendant complains that the quantum of damages allowed by the verdict is excessive.
The jury seemingly allowed $2,500 for physical pain and suffering and mental-pain and humiliation, and $5,000 (all that was claimed) for loss of earning capacity.
Plaintiff testified that he supposes he was laid up with his hand for eight weeks and suffered a good deal; and that the value of his pain and sufferings, he thought, was $2,-000.
He further testified that he thought $1,-000 was right for his mental pain and embarrassment, humiliation, etc.
On such vague and indefinite evidence we are of opinion that an award of $7,500 as damages is excessive, and should be reduced to $5,000.
It is therefore ordered that the verdict and judgment below be reduced to $5,000, and, as thus amended, be affirmed, and that the plaintiff pay the costs of appeal.
SOMMERYILLE, J., takes no part.